United States District Court
Southern District of Texas
**ENTERED**
February 24, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AKM ENTERPRISES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:23-CV-4144 |
| | § | |
| STEVEN LEE HAYES, JR., *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court in this trade-secret misappropriation case is a motion to compel arbitration filed by Defendants Ryan Dawson ("Dawson") and Corva AI, LLC ("Corva") (collectively "Defendants"). Defendants' motion (Dkt. 72) is **DENIED**.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff AKM Enterprises, Inc. ("AKM") initially sued four defendants in this lawsuit—Dawson; Corva; Steven Lee Hayes, Jr. ("Hayes"); and Samarth Gupte ("Gupte"). (Dkt. 1). Hayes and Gupte are former employees of AKM who left AKM to work at Corva, and Dawson is the co-owner and Chief Executive Officer of Corva. (Dkt. 1 at pp. 1–2; Dkt. 31 at pp. 1–2, 10–11). In its original complaint, AKM brought claims against Dawson, Corva, Hayes, and Gupte for: (1) misappropriation of trade secrets under the federal Defend Trade Secrets Act ("DTSA"); (2) misappropriation of trade secrets under the Texas Uniform Trade Secrets Act ("TUTSA"); and (3) unfair competition under Texas common law. (Dkt. 1 at pp. 14–23). AKM also sued Hayes and Gupte for breach of the employment

agreements that they had entered with AKM ("the Employment Agreements"). (Dkt. 1 at pp. 19–21).

The Employment Agreements contained arbitration clauses, so Hayes and Gupte filed unopposed motions to compel arbitration, which the Court granted. (Dkt. 18; Dkt. 19). AKM then amended its complaint to remove its claims against Hayes and Gupte and proceeded to litigate its claims against Dawson and Corva. (Dkt. 31). Nine months later, Defendants filed this motion to compel arbitration. (Dkt. 72).

In their motion, Defendants contend that, although they are nonsignatories to the Employment Agreements, this Court must nevertheless send AKM's claims against them to arbitration based on the Employment Agreements. Defendants make two alternative arguments. The first argument is that the Court "must delegate the issue of arbitrability to an arbitrator because the Employment Agreements . . . clearly and unmistakably delegate questions of arbitrability to the arbitrator." (Dkt. 72 at p. 5). In other words, Defendants argue that it is for an arbitrator, not the Court, to decide whether Defendants may enforce the Employment Agreements' arbitration provisions. Defendants' second argument is that, "[e]ven if the Court decides the issue of arbitrability on its own, it should compel arbitration of [AKM's] claims against Defendants because [AKM] is equitably estopped from denying assent to arbitration." (Dkt. 72 at p. 7).

## LEGAL STANDARDS

In adjudicating a motion to compel arbitration under the Federal Arbitration Act ("FAA"),[1] courts in the Fifth Circuit conduct a two-step inquiry. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996). The first step is to determine whether the parties agreed to arbitrate the dispute in question, which the Court does by evaluating: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Id.* at 258. The second step is to determine "whether legal constraints external to the parties' agreement" foreclose the arbitration of the dispute. *Id.*

Under the FAA, ordinary principles of state law "governing the validity, revocability, and enforceability of contracts" determine whether there is a valid agreement to arbitrate. *Halliburton Energy Services, Inc. v. Ironshore Specialty Insurance Co.*, 921 F.3d 522, 530 (5th Cir. 2019). The parties do not dispute that Texas contract law governs that determination in this case. (Dkt. 72 at p. 5; Dkt. 76). When addressing the matter of whether nonsignatories are bound by an arbitration agreement, Texas courts "endeavor to keep [Texas substantive law] consistent with federal law." *In re Labatt Food Service, L.P.*, 279 S.W.3d 640, 643 (Tex. 2009). Drawing on federal law, the Texas Supreme Court has "articulated six scenarios in which arbitration with non-signatories may be required: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary." *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d

---

[1] The parties do not dispute that the FAA applies. (Dkt. 72 at p. 14; Dkt. 76).

624, 633 (Tex. 2018); *see also In re Kellogg Brown & Root Inc.*, 166 S.W.3d 732, 739 (Tex. 2005). Arbitration agreements apply to nonsignatories "only in rare circumstances[.]" *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011).

Every circuit but the Fifth Circuit utilizes the summary judgment standard of Federal Rule of Civil Procedure 56 to evaluate motions to compel arbitration under the FAA, though the Third and Eighth Circuits also appear to endorse a standard based on Federal Rule of Civil Procedure 12(b)(6) in cases where arbitrability is apparent from the face of the pleadings. *Air-Con, Inc. v. Daikin Applied Latin America, LLC*, 21 F.4th 168, 174–75 & n.7 (1st Cir. 2021) (collecting cases). The Fifth Circuit has not articulated the appropriate procedure, but district courts within it have used the Rule 56 standard. *See, e.g., Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 443–44 (N.D. Tex. 2019). No party has proposed an alternative in this case, and there is no reason to think that the Fifth Circuit will break from the other circuits, so the Court will use the commonly employed Rule 56 procedure.

In the context of a motion to compel arbitration, the Rule 56 standard requires the movant to present evidence sufficient to demonstrate an enforceable agreement to arbitrate. *Jackson*, 389 F. Supp. 3d at 445 (citing *Clutts v. Dillard's, Inc.*, 484 F. Supp. 2d 1222, 1224 (D. Kan. 2007)). Once this burden has been met by the movant, the burden shifts to the non-movant to raise a genuine dispute of material fact for trial. *Jackson*, 389 F. Supp. 3d at 445 (citing *Hancock v. American Telephone and Telegraph Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012)). "In deciding whether the party opposing . . . compelled arbitration . . . has identified a genuine issue of material fact for trial, the evidence of the non-movant

is to be believed and all justifiable inferences are to be drawn in his favor." *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002) (quotation marks omitted). However, "[j]ust as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.*

## ANALYSIS

The Court concludes that it, not an arbitrator, must decide whether Defendants can avail themselves of the arbitration clauses in the Employment Agreements. Furthermore, the Court concludes that Defendants have not shown that equitable estoppel is appropriate. Accordingly, the Court will deny Defendants' motion to compel arbitration.

i.    *The Court must decide whether Defendants can enforce the Employment Agreements' arbitration provisions.*

Defendants first argue that the Court "must delegate the issue of arbitrability to an arbitrator because the Employment Agreements . . . clearly and unmistakably delegate questions of arbitrability to the arbitrator." (Dkt. 72 at p. 5). The Court disagrees.

The Fifth Circuit and the Supreme Court have both recently reaffirmed that "parties cannot delegate disputes over the very *existence* of an arbitration agreement" to an arbitrator. *Newman v. Plains All American Pipeline, L.P.*, 23 F.4th 393, 398 (5th Cir. 2022) (brackets omitted; emphasis in *Newman*); *see also Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 515 n.4 (5th Cir. 2019) (discussing recent Supreme Court cases). Even if an arbitration agreement contains a delegation clause, "courts must decide at the

outset whether an enforceable arbitration agreement exists at all." *Newman*, 23 F.4th at 398–400. Subsumed within that decision is the evaluation of "theories such as equitable estoppel to determine whether a nonsignatory may compel arbitration." *Id.* at 399. Put another way, an arbitration agreement's enforceability between the parties is a "first-step formation question, for the courts," not a "second-step arbitrability question, potentially for arbitrators." *Id.* at 398–400 & n.11.

Under controlling precedent, "[i]t is up to [the Court]—not an arbitrator—to decide whether [Defendants] can enforce" the arbitration clauses in the Employment Agreements. *Id.* at 399. Accordingly, the Court rejects Defendants' contention that it must grant their motion to compel arbitration based on the Employment Agreements' delegation clauses.

### ii. *Equitable estoppel is not appropriate.*

Defendants next argue that, "[e]ven if the Court decides the issue of arbitrability on its own, it should compel arbitration of [AKM's] claims against Defendants because [AKM] is equitably estopped from denying assent to arbitration." (Dkt. 72 at p. 7). The Court disagrees.

Specifically, Defendants invoke "direct-benefits" estoppel. (Dkt. 72 at pp. 7–13). Direct-benefits estoppel "precludes a plaintiff from seeking to hold the non-signatory liable based on the terms of an agreement that contains an arbitration provision while simultaneously asserting the provision lacks force because the defendant is a non-signatory." *Jody James Farm*, 547 S.W.3d at 637. "When a claim depends on the contract's existence and cannot stand independently—that is, the alleged liability arises solely from the contract or must be determined by reference to it—equity prevents a person from

avoiding the arbitration clause that was part of that agreement." *Id.* (quotation marks and footnote omitted). However, "when the substance of the claim arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law, direct-benefits estoppel is not implicated even if the claim refers to or relates to the contract or would not have arisen but for the contract's existence." *Id.* (quotation marks omitted).

Defendants contend that, "[u]nder the doctrine of direct benefits estoppel, [Defendants] may enforce the arbitration agreements against [AKM] because [AKM's] claims seek to benefit from and hold [Defendants] liable for alleged breaches of obligations imposed by the Employment Agreements." (Dkt. 72 at p. 11). Defendants note that AKM's live pleading repeatedly refers to the Employment Agreements to support AKM's claims for misappropriation of trade secrets and unfair competition. (Dkt. 72 at pp. 11–12).

The Court disagrees with Defendants' characterization of AKM's claims. AKM has pled claims under the TUTSA and the DTSA, which provide statutory trade-secret protection. *See* Tex. Civ. Prac. & Rem. Code § 134A.004 (TUTSA); 18 U.S.C. § 1836 (DTSA). AKM has also pled claims under Texas common law regarding unfair competition, and those unfair-competition claims are necessarily predicated on AKM's trade-secret claims. Since unfair competition is a derivative tort, AKM must "show an illegal act by [Defendants] which interfered with [AKM's] ability to conduct its business." *Taylor Publishing Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000). "Although the illegal act need not necessarily violate criminal law, it must at least be an independent tort." *Id.*; *see also Schoellkopf v. Pledger*, 778 S.W.2d 897, 904–05 (Tex. App.—Dallas 1989,

writ denied) (cited in *Taylor*) ("Without some finding of an independent substantive tort or other illegal conduct, we hold that liability cannot be premised on the tort of 'unfair competition.'"). In short, AKM's claims arise entirely from general obligations imposed on Defendants by Texas and federal statutory law and Texas common law—and, more particularly, by the Texas and federal trade-secret statutes.

Where the Employment Agreements will evidently come into the picture is as evidence of the measures that AKM took to safeguard the alleged trade secrets at issue. The protections afforded by the TUTSA and the DTSA apply only when the owner of the alleged trade secret has taken reasonable measures under the circumstances to keep the information secret. *See* Tex. Civ. Prac. & Rem. Code § 134A.002(6); 18 U.S.C. § 1839(3). So, in order to prove its claims, AKM must provide evidence of the measures that it took to ensure the secrecy of the information at issue. Documents like non-disclosure and confidentiality agreements, for instance, can constitute evidence of such measures. *See, e.g., Morgan v. Clements Fluids South Texas, LTD*, 589 S.W.3d 177, 187–88 (Tex. App.— Tyler 2018, no pet.) (examples of company's "reasonable measures" in a TUTSA case included "requiring all employees and contractors working on [the trade secret] to execute [non-disclosure agreements]" and "emphasizing the confidential nature of its business in its offer letters and employee handbook"); *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 660 (9th Cir. 2020) ("Under the DTSA, . . . [c]onfidentiality provisions constitute reasonable steps to maintain secrecy."). AKM will likely need to refer to the Employment Agreements in order to prove that it took reasonable measures to protect pieces of information that it deemed trade secrets.

But referring to the existence of the Employment Agreements to provide evidence supporting independent tort claims against Defendants is not the same thing as seeking to hold Defendants liable based on the terms of the Employment Agreements. Consider *Jody James Farms*. In that case, a crop-insurance policy contained an arbitration clause; and the policyholder arbitrated a dispute with the carrier after the carrier denied a claim because the policyholder had failed to comply with the insurance policy's notice-of-loss provisions. *Jody James Farms*, 547 S.W.3d at 630. The insurance policy allowed the policyholder to submit claims to the carrier through the policyholder's insurance agent, and the policyholder contended that it had "promptly" called its agent after the loss. *Id.* at 629, 638. Nevertheless, the arbitrator found that the policyholder had not submitted a timely notice of its claim to the carrier. *Id.* at 630. After the arbitration concluded, the policyholder sued its agent for breach of fiduciary duty and violations of the Texas Deceptive Trade Practices Act ("DTPA"), alleging that the agent's failure to report the loss to the carrier on the policyholder's behalf had resulted in the denial of coverage and a substantial pecuniary loss. *Id.* The insurance agent was a nonsignatory to the insurance contract but still sought to arbitrate the policyholder's lawsuit against it under the insurance contract's arbitration clause, contending that direct-benefits estoppel applied. *Id.* at 636.

The Texas Supreme Court disagreed with the insurance agent's direct-benefits argument, concluding that the policyholder's lawsuit "premise[d] the [agent's] liability on tort and DTPA duties that are general, non-contract obligations." *Id.* at 638. The Texas Supreme Court noted that the insurance policy itself "d[id] not impose any duties or obligations on the [agent,]" meaning that "any liability [wa]s necessarily extra-

contractual." *Id.* at 638–39. "At most," the Texas Supreme Court wrote, "by permitting [the policyholder] to report claims through an insurance agent, the policy may [have] assume[d] that [the agent had] a pre-existing duty to follow through in filing an insurance claim. But without contractually mandated duties, [the policyholder] would be unable to maintain a contract claim against the [agent] under the insurance policy even if it were inclined to do so." *Id.*

So it is here. AKM's lawsuit premises Defendants' liability on general, non-contractual obligations imposed on Defendants by Texas and federal statutory law and Texas common law. Although AKM's claims may refer to the Employment Agreements, the Employment Agreements themselves impose no specific duties or obligations on Defendants, and AKM's claims do not arise solely from them. Accordingly, direct-benefits estoppel is not appropriate. *Id.* at 638 ("Jody James might seek a measure of loss that equates to the amount of a contract loss, but direct-benefits estoppel does not apply simply because the claim *refers* to the contract.") (quotation marks and ellipsis omitted; emphasis in *Jody James Farms*); *cf. Rachal v. Reitz*, 403 S.W.3d 840, 842, 847–48 (Tex. 2013) (holding that a beneficiary's suit to remove a trustee was arbitrable under direct-benefits estoppel when the beneficiary based his suit wholly on the trustee's alleged violation of the trust's terms).

## CONCLUSION

Defendants' motion to compel arbitration (Dkt. 72) is **DENIED**.

 SIGNED at Houston, Texas on February 24, 2025.

_____
 GEORGE C. HANKS, JR.
 UNITED STATES DISTRICT JUDGE